WILLIAM ALFRED SAWYER, alias "CONCH" SAWYER v. STATE OF FLORIDA.

4 So. (2nd) 713
En Banc
Opinion Filed November 21, 1941

*William Lamar Rose* and *E. M. Magaha,* for Appellant;

*J. Tom Watson,* Attorney General, *Joseph E. Gillen,* Assistant Attorney General, and *Woodrow M. Melvin,* Special Assistant Attorney General, for Appellee.

BUFORD, J.—The appeal brings for review judgment of conviction of murder in the first degree.

A careful perusal of the entire record discloses no reversible error.

The burden of the contention on behalf of the appellant is that the evidence is insufficient to establish the element of premeditated design.

We are unable to agree with this contention. There are some conflicts in the evidence and there are shown to have been some extenuating circumstances which might have reasonably appeared to a sympathetic jury to the extent of producing a recommendation to mercy. But the jury did not make such recommendation. This Court is without power to alter the judgment except upon the finding of error.

The matter of commutation of judgments and sentences of this sort is vested in the State Board of Pardons.

There appears in the record ample legal evidence which, if believed by the jury, was sufficient basis on which the jury was justified in reaching the conclusion that defendant, after having had an altercation

with deceased and others, left the place where the homicide afterwards occurred and, in the night time, hurried across the water in a motor boat to a place some two or three miles away, where he procured a shot gun, then went on to another place and procured some shells loaded with buck shot, with which he loaded the repeater shot gun, then returned in haste to the place where he had left the deceased in company with some other men and arriving at that place he approached the men who were drinking and carousing in a shanty where there was a little firelight and, from a vantage point in the dark, shot and killed the deceased who was in the dimly lighted shanty.

If these were the facts and the jury believed, after considering all of the evidence, beyond a reasonable doubt that such were the facts, the conclusion that defendant was guilty of murder in the first degree was justified.

The Circuit Judge heard the evidence, saw and observed the manner and demeanor of witnesses on the stand. He placed his stamp of judicial approval on the verdict, denied a motion for new trial and imposed the judgment and sentence required by the law.

Under the state of the record, it is our duty to affirm the judgment.

It is so ordered.

Affirmed.

WHITFIELD, TERRELL, THOMAS, and ADAMS, J. J., concur.

BROWN, C. J., and CHAPMAN, J., dissent.

CHAPMAN, J., dissenting.—The appellant, William Alfred Sawyer, alias "Conch" Sawyer, on October 7,

1940, was indicted by a grand jury of Collier County, Florida, for the murder of Virgil Weeks in said County on June 15, 1940. He was adjudged insolvent and the Court appointed Judge E. M. Magaha of the Fort Myers bar and William Lamar Rose of the Punta Gorda bar to represent and defend the appellant on the murder charge alleged in the indictment.

On November 25, 1940, the appellant was placed upon trial before a jury in Collier County, Florida, and convicted of murder in the first degree, without recommendation to mercy. The trial court overruled and denied a motion for a new trial and adjudged the appellant guilty of the crime of murder in the first degree and sentenced him to death by electrocution. From this judgment an appeal has been perfected to this Court and the sufficiency of the testimony to sustain the verdict and judgment is here challenged, together with other assignments of error.

The trial court denied a motion to quash the indictment on the several grounds appearing in the motion. Likewise denied a motion for a better bill of particulars. We fail to find error in either of these assignments. The charge or instruction by the trial court to the jury as to the law of the case has been carefully examined and we fail to find error therein, when considered in its entirety.

The motion for a new trial challenged the sufficiency of the testimony to sustain the verdict and it is contended that verdict is contrary to the weight, sufficiency and preponderance of the testimony. Some adverse rulings made by the court during the progress of the trial appear in the motion for a new trial. The testimony discloses some irrelevant and possibly prejudicial evidence presented and given to the jury

during the progress of the trial, but counsel for the defendant failed or omitted to make timely objections thereto, and for this reason the trial court was deprived of the opportunity to rule upon or determine its admissibility.

The locus of the tragedy was in an old house located on Marco Island where the Atlantic Coast Line Railroad track approaches the Island from the mainland. It had been used to house a railroad tender stationed at this point, and by water the distance was approximately one mile to the small town of Marco. On the afternoon of June 15, 1940, the appellant and Mack Williams took a motor boat and a small skiff owned by a Mr. Brownlee, who employed them, and went fishing for cat fish for Mr. Brownlee, of Marco, who operated a fish house and had a connection with the South Fish Company. It was the idea of the appellant and Williams that cat fish could be caught with a net at a point near the railroad bridge and the house situated nearby, and after arriving at this point they were successful in a haul or two, but a change in the tide or possibly a strong wind caused them to discontinue fishing until another change in the tide, which they expected to occur right away. They left their motor boat, skiff and the net stretched in the water and appellant and Williams went to the bridge tender house for the purpose of getting some water, and there found Virgil Weeks, Fred Nash and Bob Nash camping.

The boys in the house had a gallon of wine in a glass jug, which was immediately presented to the appellant and Williams and each requested to drink. There was evidence tending to show that the three boys at the house had been drinking for some time

when Williams and the appellant arrived. The appellant was about twenty-three year of age and one of the Nash boys was less than twenty-one, while the others appeared to be older than the appellant. The boys were acquainted with each other and it is possible that all had been engaged in the fishing business. They had been thrown together around Marco and frequently referred to each other as friends, and when the five were first thrown together in the old house that afternoon there was no feeling of animosity or hostility among them.

The first acts of hostility occurred after drinking a considerable portion of the wine, when heated arguments, bitter contentions and fist fights immediately followed. The merits and details of these fights were given to the jury contrary to the utterances of this Court in White v. State, 59 Fla. 53, 52 So. 805. Two of the boys went to Marco for more wine, using the launch in so doing, after detaching the skiff therefrom. More wine came into the camp and with it additional arguments, disputes and fights occurred, which were detailed to the jury during the trial without objection on the part of counsel for defendant. The appellant, according to his testimony, which was not seriously contradicted, was by the deceased, driven from the house when armed with a pistol. The appellant took the launch, went to Marco, obtained a shot gun and shells, and then returned to the camp house around 10:30 P. M. He went into the house and the deceased threw the empty glass jug at him, striking him on the head, when the appellant's gun fired into the wall of the house and the second shot killed Virgil Weeks. One of the Nash boys was lying on the floor drunk and the deceased was near him

preparatory to singing for him a "song." The group
testified of the threats to kill them after he killed
Virgil Weeks; after the drinking of one and one-half
gallons of wine by the entire group within a few hours
one of the Nash boys was so drunk that he had to lie
down; there was considerable vomiting and nausea;
and on the testimony of Mack Williams and the two
Nash boys rests the State's case as to the actual
shooting. There is a striking similarity of the testi-
mony of these witnesses. While the State was not
interested in whether or not these three witnesses
were drunk, the question was whether or not these
three witnesses told the truth.

The appellant testified that after the deceased,
when armed with a pistol, drove him from the house
where his skiff and net were he got the gun for self
protection when removing his net and skiff. On his
return he tried but was unable to haul the net alone
and went to the house to get the assistance of Mack
Williams, when the trouble occurred. The deceased
was kneeling near a pallet on which one of the
drunken Nash boys was lying, preparatory to singing
for him. When the appellant approached, the de-
ceased threw the glass jug at him knocking him down.
Witnesses testified as to seeing cuts and bruises on
his face immediately after the difficulty and several
weeks thereafter while in jail small pieces of glass
were removed from his face and eyes. He admitted
the shooting shortly after he was taken into custody
to a number of people, who appeared as witnesses at
the trial. He requested the privilege of attending the
Coroner's hearing, but was advised by the arresting
officer that the large family connections and friends
of the deceased in the community might cause trouble

if he appeared at the hearing. The appellant was but little more than a stranger in the county and his employment as a fisherman took him from Key West to Panama City. He was without funds with which to employ private counsel, was young, ignorant, and family connection to him were not helpful.

Mr. Brownlee owned the fishing equipment and employed the appellant. The net was new and the appellant had discussed the purchase thereof. Mr. Brownlee operated the fish house and was a deputy sheriff. The appellant requested Mr. Brownlee to go with him on his return to the camp house. If he had done so it is likely that no difficulty would have occurred, but he declined to go. Mr. Brownlee testified about the appellant stating that he would have to take him to "Everglades." It was the legal duty of the deputy under Sec. 7530 C.G.L. to preserve the peace and a failure so to do subjected him to the payment of a fine. He was the owner of the fishing equipment, the employer of the appellant and a deputy. He chose to permit the appellant to subject himself to such difficulty, if any, that existed when returning his property.

Indisputable facts and conclusions appear in this case viz: (1) the three eye witnesses to the tragedy, with two others, drank one and one-half gallons of wine within four or five hours; (2) the shooting occurred while they were under the influence of the wine; (3) the appellant was hit by the deceased on the head with the jug; (4) the appellant shot the deceased after being hit; (5) the appellant was in custody of the fishing equipment and had a lawful right to return it to Mr. Brownlee; (6) the deceased was without lawful authority to interfere with the

appellant and his possession of the fishing equipment; (7) the appellant was twenty-three years of age, ignorant, without funds with which to defend himself, and practically a stranger in Collier County; (8) the appellant sustained injuries when the glass jug hit his head and was broken; (9) the appellant alone having failed to haul in the net, had a lawful right to have gone to the house to get the assistance of Mack Williams; (10) the appellant's testimony to the effect that the deceased, armed with a pistol shortly prior to the firing of the fatal shot, ran him from the house is not contradicted.

One of our legal scholars has said that "The majesty of the law is in the heart of every true American, its voice is the harmony of the world, all things both in Heaven and earth do her homage, the least among us should feel her protecting care and the greatest not exempted from her infinite power because her fountain head is the bosom of God." Truly the law extends its sheltering care to our humblest citizen and on this impregnable foundation stands our Democracy. Justice is not purchasable in the market places, but is administered by a recognized and established system of laws.

Sec. 310 of the Criminal Code (c. 19554, Acts of 1939, Laws of Florida), in cases like the one at bar, authorizes this Court when considering the evidence to reverse a judgment on the ground that the evidence fails to sustain the verdict and judgment appealed from with directions to the trial court to enter such judgment for a lesser degree as the evidence sustains. I have concluded that the evidence fails to establish murder in the first degree but at the most will only

justify the entry of sentence for murder in the second degree.

BROWN, C. J., concurs.