123 So.2d 703 (1960)
Robert Wesley DAVIS, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
October 19, 1960.
*704 Donald O. Hartwell, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
DREW, Justice.
Robert Wesley Davis was indicted by the Grand Jury of Leon County for the rape of an eleven year old girl. Counsel was appointed to conduct his defense and thereafter a plea of guilty was entered in open court.
Before accepting the plea, the trial court, pursuant to Florida Statutes, § 917.01, F.S.A.,[1] on its own motion appointed two *705 medical experts to examine appellant and, after testimony, the court adjudged the appellant to have been legally responsible at the time of the commission of the act in question and at the time of the trial.[2] Evidence was then presented as to the *706 facts and circumstances of the crime and also such matters in mitigation or explanation as should be offered by the defendant. The trial judge made no recommendation of mercy and sentenced the appellant to death.
Appellant has suggested seven questions for our review and they will be considered seriatim:
1. The court erred in permitting the state, after a plea of guilty, to introduce evidence of the commission of a crime, in that such evidence was immaterial and irrelevant to the issue before the court, and that such action on the part of the state resulted in an adversary proceeding contrary to the intent and purpose of Section 921.13, Florida Statutes, F.S.A.
2. The court erred in failing to consider the overwhelming and uncontroverted testimony of mitigating circumstances.
3. The court abused its discretion in imposing the death sentence upon the appellant by disregarding and failing to consider the overwhelming and uncontroverted evidence of mitigating circumstances.
4. The court erred in concluding that the evidence produced on the issue of the sentence to be imposed was not legally sufficient to constitute mitigating circumstances.
5. The court erred in denying the motion for new trial and petition for rehearing on sentence.
6. The sentence imposed was contrary to the manifest weight of the evidence, or was motivated by prejudice, passion, mistake or other improper cause.
7. The sentence imposed by the court was excessive.
These may be reduced to three questions:
1. Whether the failure of the trial judge to find that the appellant was entitled to a recommendation to mercy was an abuse of discretion which is reviewable on appeal.
2. Whether or not, after the appellant entered a plea of guilty, it was an abuse of discretion for the trial court to permit the state to introduce evidence of the facts and circumstances surrounding the commission of the crime charged against the appellant.
3. Whether or not a review of the evidence taken after the entry of the appellant's plea of guilty shows the interests of justice require a new trial within the contemplation of Section 924.32, Florida Statutes, F.S.A.[3]
*707 Section 794.01, Florida Statutes, F.S.A., under which the death penalty was imposed appears in the footnote.[4]
We now turn to the first point on appeal: whether the failure of the trial judge to find that the appellant was entitled to a recommendation to mercy was an abuse of discretion which is reviewable on appeal.
In a long adhered to line of cases, we have held that where a sentence is within the statutory limit, the extent of it cannot be reviewed on appeal regardless of the existence or nonexistence of mitigating circumstances. Section 794.01, supra, fixes the maximum penalty for the offense of the appellant at death and since this is within the statutory limit, it is not reviewable. It is true in 1942 in the case of Nowling v. State,[5] we reversed a conviction because, among other things, the sentence was excessive. If the language of the opinion with regard to the length of the sentence was not pure obiter and could be said to establish the law that this Court would review the extent of a sentence within the statutory limits on appeal, such doctrine was receded from the following year in Brown v. State.[6] In that case we unequivocally held that the Nowling case, insofar as it could be construed to hold that this Court could review the extent of such a sentence when within the statutory limits, was overruled. There has been no deviation from the rule announced in the Brown case since 1943.[7]
The question of the severity of the sentence is one, therefore, which must be considered *708 in light of the words of the Court in Stanford v. State, Fla. 1959, 110 So.2d 1, 2,
"The length of the sentences imposed in these cases on these young men sounds harsh when viewed in the cold light of this record, but such sentences are less than the maximum fixed by law and this Court has no power to reduce or modify them * * *."[8]
With the foregoing legal precept as the keystone, we must further proceed logically to the general rule that the Court has the same power to fix the punishment as the jury would have on the verdict of guilty.[9] Recommendation of mercy is a question to be decided on a plenary basis by the trial judge where there is a plea of guilty and is as binding as a jury's decision in that regard. Under Section 794.01, supra, and 919.23(2),[10] where the defendant is found guilty by a jury, the penalty is death unless a majority of the jurors recommend mercy and where there is no jury such as in the instant case, Section 919.23(2) Florida Statutes, F.S.A., gives the judge power to recommend mercy and thereby eliminate the death penalty.
The finality of the action of the jury in the exercise of its discretion to either recommend or not recommend mercy is not reviewable on appeal. The appellant, having plead guilty here, must be confronted with the proposition that the judge's decision not to grant mercy is likewise unappealable.[11] This Court may not substitute *709 its views for those of the trial judge with respect to whether the death sentence should have been imposed. While the record is silent as to the reason for the plea of guilty by the appellant, it is clear the appellant was willing to leave up to the court the decision of whether he should receive the death penalty or some lesser sentence.[12]
The second point wherein appellant alleges error was after the plea of guilty was made and the State introduced evidence as to the facts and circumstances surrounding the commission of the crime charged against the appellant. Appellant complains the trial judge, over objection, permitted the State to adduce evidence to prove its case just as though the appellant had been tried by a jury on a not guilty plea. Appellant relies upon Section 921.13, Florida Statutes, F.S.A., as authority for this position.[13] Under this statute, which recognizes those instances where trial judges are granted wide discretion as to the penalty to be inflicted on the defendant, express authorization is given on the suggestion of either party to make an independent investigation or inquiry into the circumstances in order to determine the extent of the sentence to be imposed.[14] To have refused the admission of evidence on the part of the State would be an admission that the trial judge was not entitled to be fully informed of all the facts as a guide in determining what penalty should be imposed. The statute does not proscribe his discretion as to what he desires to learn and we see no reason to do so. The statute mentions, "circumstances which may be taken into consideration". The factual data is part of that delimiting area.[15]
*710 To understand the purposefulness of the evidence taken into consideration by the trial judge, the court's findings and judgment are incorporated in the footnotes.[16]
*711 The final point which we must consider, after exacting compliance with Section 924.32, F.S.A., supra, which requires us to read carefully all of the evidence, is to determine whether or not the ends of justice require a new trial. This must be answered in the negative.
The evidence taken in determination of the penalty was strictly speaking taken not at the trial but in compliance with Section 921.13, Florida Statutes, F.S.A., the plea of guilty having eliminated the need for a trial. Since the original trial is the foundation of a new trial, the technical application of Section 924.32, F.S.A. is doubtful. Nevertheless we have observed it meticulously.
The theories of many reputable criminalogists on the responsibility for crime tend to explain the seemingly incomprehensible act of this appellant. Crime must be punished but it is the consideration of the individual that should determine the kind of treatment appropriate to his case.[17] Responsibility should be the basis of punishment, and individualization the criterion of its application; such is the formula of modern penal law. Whether this product of heredity and environment is given the benefit of further consideration as to the severity of his punishment is a matter for the Pardon Board to decide.
Affirmed.
THOMAS, C.J., and TERRELL, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] "917.01 Examination of defendant's mental condition to determine whether he shall be tried  (1) If before or during trial the court, of its own motion, or upon motion of counsel for the defendant, has reasonable ground to believe that the defendant is insane, the court shall immediately fix a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested qualified experts to examine the defendant and to testify at the hearing as to his mental condition. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party.

"(2) If the court, after the hearing, decides that the defendant is sane, it shall proceed with the trial. If, however, it decides that the defendant is insane, it shall take proper steps to have the defendant committed to the proper institution. If the defendant is declared insane during the trial, and afterwards released from the institution to which he has been committed, as sane, his former uncompleted trial shall not constitute former jeopardy. If, after a defendant has been committed to an institution as insane, the proper officer of such institution is of the opinion that the defendant is sane, he shall report this fact to the court which conducted the hearing. If the officer so reports, the court shall fix a time for a hearing to determine whether the defendant is sane. This hearing shall be conducted in all respects like the original hearing to determine the defendant's sanity. If found sane, the trial shall proceed; if found insane, he shall again be recommitted as hereinabove set forth. No defendant committed by a court to an institution, by reason of the examination referred to in this paragraph, shall be released therefrom, without the consent of the court committing him."
[2] "Direct Examination By Mr. Hopkins.

"Q. Give us your name, please. A. Frederick B. Thigpen.
"Q. You are a medical doctor by profession? A. Yes.
"Q. Practicing here in Tallahassee, Florida? A. Yes, sir.
"Q. Do you specialize in any branch of medicine, doctor? A. Internal medicine.
"Mr. Hopkins: Mr. Hartwell, will you admit his qualifications as a medical doctor?
"Mr. Hartwell: Yes, sir.
"Q. Doctor, were you and Dr. Clements appointed by this court to examine one Robert Wesley Davis as to his sanity? A. Yes. I examined him on the 20th of December, 1959.
"Q. What did this examination consist of, Doctor? A. Mainly an interview as to his personality disorder.
"Q. What conclusion did you reach as to the question of the sanity of this subject? A. I didn't feel that he met the usual definition of legal insanity. I did not feel that he was psychotic.
"Q. You felt then that he was legally sane. Is that correct? A. Yes.
"Q. In your opinion, he knows the difference between right and wrong? A. Yes.
"Mr. Hopkins: I have no further questions.
"Cross Examination By Mr. Hartwell:
"Q. Just a couple of questions, Doctor. I have a typewritten report here and ask if this is the report you gave. I am quoting now. `I examined this man at the Leon County Jail 20, December, 1959. I find him to be a homosexual with a past history of sexual activities with younger boys. He was not delusional or psychotic and he was fully rational and oriented. I could find nothing to suggest that he is psychotic or insane.'
"A. Yes.
"Q. Your positive conclusion is then that he was an active homosexual.
"A. Yes.
"* * * Questions By The Court:
"Q. Doctor, you referred to what you called `legally insane' and Mr. Hopkins asked the question as to whether or not he knew right from wrong. According to the decisions of our Supreme Court or our appellate Courts on the question, they have used these words, which is something of an elaboration of the rule. Legal insanity is established when the accused is laboring under such a defect of reasoning from disease of the mind as to not know the nature or the quality of the act that he was doing or as not to know that what he was doing was wrong. Now, that is apparently then in two parts here. In your examination, did you find or did you not find that this person had any defect of reasoning from a defect or disease of the mind as would prevent him from knowing the nature and quality of the act he was doing * * *
A. No.
"Q. * * * and not knowing that what he was doing was right or wrong?
A. I felt he knew what he was doing.
"Q. Knew what he was doing and knew whether it was right or wrong?
A. Yes."
"Report Of Dr. M.R. Clements:
"Dear Judge Willis:
"As far as my report, I gave Robert Wesley Davis a mental examination in the Leon County Jail February 4, 1960. It is my professional opinion that Robert Wesley Davis is a psychopath. He is an active, aggressive homosexual. He knows right from wrong and is responsible for his acts. He is not in my opinion legally insane."
[3] "924.32 What appellate court to review. 

"(1) Upon an appeal by either the state or the defendant the appellate court shall review all rulings and orders appearing in the appeal papers in so far as it is necessary to do so in order to pass upon the grounds of appeal. The court shall also review all instructions to which an objection was made and which are alleged as a ground of appeal, and the sentence when there is an appeal therefrom. The court may also in its discretion, if it deems the interests of justice to require, review any other things said or done in the cause which appears in the appeal papers including instructions to the jury. The reception of evidence to which no objection was made shall not be construed to constitute a ruling by the court.
"(2) Upon an appeal by the defendant from the judgment the appellate court shall review the evidence to determine if it is insufficient to support the judgment where this is a ground of appeal. Upon an appeal from the judgment by a defendant who has been sentenced to death the appellate court shall review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not."
[4] "794.01 Rape and forcible carnal knowledge; penalty.  Whoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of ten years, shall be punished by death, unless a majority of the jury in their verdict recommend mercy, in which event punishment shall be by imprisonment in the state prison for life, or for any term of years within the discretion of the judge. It shall not be necessary to prove the actual emission of seed, but the crime shall be deemed complete upon proof of penetration only."
[5] 1942, 151 Fla. 584, 10 So.2d 130. This case was reversed for three reasons expressed in the opinion: (1) a defective information (2) the excessive sentence and (3) the unlawful admission of evidence.
[6] 1943, 152 Fla. 853, 13 So.2d 458.
[7] Other cases in which we have upheld this principle are La Barbera v. State, Fla. 1953, 63 So.2d 654, at pages 654, 655, where the Court stated,

"(3) The second assault is aimed at the term of sentence imposed which the appellant insists was excessive. There is no claim that it was more than the judge was authorized to pronounce under the statute dealing with the offense charged, but only that it was disproportionate to the appellant's just desserts.
"This question has long since been answered contrary to appellant's contention, but it may be wise to refer to three of our decisions on the subject.
"It is true that in Nowling v. State, 151 Fla. 584, 10 So.2d 130, the then Division B of this Court apparently invoked the Declaration of Rights, Section 8, where a defendant was sentenced to three years for concealing a gallon of `moonshine' with intent to defraud the state of the tax. The writer of this opinion was inadvertently and erroneously recorded as concurring. The following year (1943) the Court in an opinion by Mr. Chief Justice Buford, with four justices concurring, specifically overruled the decision in Nowling v. State, supra, and held that the court would not disturb a sentence authorized by statute, leniency thereafter being available only by petition to the State Board of Pardons. Brown v. State, 152 Fla. 853, 13 So.2d 458. This position was restated in Walker v. State, Fla., 44 So.2d 814, where the effect of the decision of Brown v. State upon the decision in Nowling v. State was stressed.
"We now reaffirm the principle that if a trial judge imposes a sentence that is within the limits defined in the statute denouncing the offense, further relief by way of reducing the term is a matter purely within the province of the parole authorities."
[8] In this case four teenage youths were found guilty of robbing the complaining witness of the sum of $5 and were sentenced to the state penitentiary for terms differing from six to ten years.
[9] 24 C.J.S. Criminal Law § 1570 b(1) (1941), states:

"In the absence of a statute to the contrary, or under a statute so providing, on a plea of guilty, the court has the same power to fix the punishment that the jury would have under the statute on a verdict of guilty after a trial. * * *"
[10] "(2) Whoever is convicted of a capital offense and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment for life; or if found by the judge of the court, where there is no jury, to be entitled to a recommendation to mercy, shall be sentenced to imprisonment for life, at the discretion of the court."
[11] Singer v. State, Fla. 1959, 109 So.2d 7, 27, where the Court held:

"It is not for us to determine whether the defendant should have received a recommendation to mercy, that is solely for the jury to decide. * * *"
In Pait v. State, Fla. 1959, 112 So.2d 380, 385, the Court opined:
"We are here dealing with a capital case. Under Section 919.23, Florida Statutes, F.S.A., the jury can absolutely control the punishment to be prescribed when it convicts an accused of first degree murder. The jury can recommend mercy without rhyme or reason. Its authority in this regard is bounded only by the conscience of the jurors. It is impossible to look at a set of facts and determine whether a jury should or should not recommend mercy. * * *"
In Baker v. State, 1939, 137 Fla. 27, 188 So. 634, the Court held:
"It has been urged, too, that the jury should have included in their verdict a recommendation of mercy, thereby fixing as the punishment imprisonment for life. There was little upon which they could have based such a qualification, and, even with mitigating circumstances present, we believe this is not the forum where that feature may be considered."
In Sawyer v. State, 1941, 148 Fla. 542, 4 So.2d 713, the Court held to the same effect:
"* * * There are some conflicts in the evidence, and there are shown to have been some extenuating circumstances which might have reasonably appeared to a sympathetic jury to the extent of producing a recommendation to mercy. But the jury did not make such recommendation. This court is without power to alter the judgment except upon the finding of error.
"The matter of commutation of judgments and sentences of this sort is vested in the State Board of Pardons."
In Johnson v. State, Fla. 1952, 61 So.2d 179 the Court concluded:
"* * * While the jury might have recommended mercy, this court is not a proper forum in which to seek a mercy commutation. Such jurisdiction lies either with the trial jury or the State Board of Pardons."
[12] Before accepting the plea, the trial court conducted the following proceedings:

"The Court: Mr. Davis, please listen to the Court carefully. The crime of which you stand charged in this indictment is one for the crime of rape, which under the laws of this State, is a capital crime or one for which the death penalty is authorized. By the entry of your plea of guilty, you will have withdrawn from the proceedings (sic) of this case the necessity of impaneling a jury of twelve persons to which you are entitled to under the Constitution. You have a right to enter a plea of not guilty and to put upon the State the burden of prooving (sic) to the exclusion of and beyond a reasonable doubt your guilt. But by entering a plea of guilty you are relieving the state of the burden of establishing your guilt and you are thus placing yourself completely upon the mercy of the presiding judge as to whether or not you should sustain and suffer the extreme penalty. Do you understand that?
"Robert Wesley Davis: Yes, sir.
"The Court: And it's your desire and your wish to enter a plea of guilty to this and to place yourself completely and utterly at the mercy of this court?
"Robert Wesley Davis: Yes, sir.
"The Court: Mr. Hartwell, you have reached that conclusion and have advised him so?
"Mr. Hartwell: Yes, sir, we have fully discussed this.
"The Court: Mr. Hopkins, is there anything you would like to say?
"Mr. Hopkins: We'd like to call the witnesses, your Honor. We'd like to proceed to take testimony in the case.
"The Court: All right. The Court determines that the plea which the defendant has entered is one which is entered advisedly and with the benefit of the advice of counsel and that the defendant thoroughly understands his rights and has deliberately chosen to enter the plea of guilty and the Court will accept such plea."
[13] "921.13 Inquiry into mitigating or aggravating circumstances.  When the court has discretion as to the penalty to be inflicted on the defendant it shall, upon the suggestion of either party that there are circumstances which may properly be taken into consideration, hear evidence as to the same summarily in open court, either immediately or at a specified time and upon such notice to the adverse party as the court may direct; or the court may inquire into such circumstances of its own motion."
[14] Stanford v. State, supra.
[15] "However, before pronouncing sentence on a plea of guilty, the court should, and under a statute substantially so providing must, know the facts on which it is founded, and should see that it made by a person of competent intelligence, freely and voluntarily, and with a full understanding of its nature and effect. * * *" 24 C.J.S. Criminal Law § 1563a (1941).
[16] "This cause came on for consideration by the Court subsequent to the arraignment of the defendant and his entering a plea of guilty. Before accepting the plea, the Court inquired of the defendant if he knew of his rights to trial by jury and determination by a jury of twelve jurors of the issue of his guilt or innocence and also, in the event of a finding of guilt of the crime of rape, of consideration by such jurors of whether there should be a recommendation for mercy; and that in the event of such mercy recommendation by a majority of such jurors the death penalty would be precluded; and that the acceptance by the Court of a plea of guilty to the charge of rape, as set forth in the indictment, would place upon the presiding trial judge the power and duty of the determining if mercy should be recommended or not recommended; and that if the presiding judge declined to recommend mercy the penalty should be death. To this the defendant replied that he fully understood his rights to trial by jury and also understood the full import of his plea of guilty. Counsel for defendant indicated concurrence with defendant.

"The Court thereupon accepted the plea and directed that evidence be presented as to the facts and circumstances of the crime and also such matters in mitigation or explanation as should be offered by defendant.
"The Court heard testimony presented by the State, viewed and examined various exhibits offered and received into evidence; took a view of the scene of the crime (in the presence of the defendant, his attorney and the State Attorney); heard the testimony of the defendant and of an expert psychologist testifying in his behalf. The Court also heard arguments of counsel for the defendant and of the State Attorney.
"The foregoing proceedings took place on April 18 and 19, 1960. At the conclusion of same the Court announced it would take under advisement the verdict, Judgment and sentence to be rendered.
"The Court has considered all of the foregoing and is now advised of its opinion and conclusions in the premises. The guilt of the defendant of the charge of rape, as set forth in the indictment, is abundantly and conclusively established by direct evidence of two eye witnesses and of the victim, fully corroborated by circumstantial evidence. Such facts, so established, are in almost every detail corroborated by the testimony of the defendant himself. Such facts reveal a deliberate and carefully planned determination on the part of the defendant to ensnare and sexually molest two small boys (one eleven years old and the other younger) who were playing with the rape victim at noontime in a wooded glen. The defendant had, from a distance, observed the three children walking toward the wooded area and then plotted his purpose. By a circuitous and rather intricate route he entered the wooded area where the children had in the meantime arrived. He approached them and made some innocent inquiry to allay suspicion. Very quickly he produced an ice pick, with which he had provided himself, threatened to hurt them if they did not obey him. He ordered the boys to drop their trousers and he made obscene remarks to the older boy. He ordered the little girl to remove some of her clothing and directed the older boy to fondle her breasts. Subsequently he ordered the little girl to take off all of her clothes and lay on the ground. First he ordered the young boy to have sexual intercourse with the girl. The young boy in his ignorance and innocence could not. Purporting to demonstrate, the defendant then raped the little girl, rupturing the hymen, producing hemorrhage, and even reaching a climax. The boys were forced to watch and defendant made threats of harm to any crying out or leaving. Defendant then warned all of the children to remain where they were until they heard a motorcycle leave. He departed, went to the auto parked nearby where a companion awaited him and they left the scene.
"Defendant and his companion were later the same day arrested in the outskirts of town where they were parked beside the highway eating some food they had purchased at a nearby filling station. Following the crime, the defendant and his companion had rather casually ridden from place to place in the city  looking for employment at the fair grounds, selling some equipment at a filling station to get money to buy food and gasoline, buying the food at another place and then parking on the shoulder of the road to eat.
"The companion, who owned the car, did not participate in the events of the rape. He was at the car some distance away at the time, having declined to pursue any sexual activity when he observed the extreme youth of the children.
"The events of the assault constitute a most hideous perpetration of child abuse by vicious indulgence in the most abominable and detestible of lusts. Guilt of rape in its most vile form is manifest.
"If there be any basis for a recommendation of mercy it must be found in the defendant's background, his handicaps and in his underprivileged upbringing. The defendant's personal history of neglect as a child, early sordid experiences, an unnatural deviation in sex attitudes and relationships, and a long history of crime and delinquency does reveal an individual who has not had the advantage of having instilled in him desirable ideals. However, there have been many efforts to correct his evil ways by custodial detainment and attempted rehabilitation. The defendant has failed to respond and there is no indication that there has ever been any real effort on his part to effect correction. He is and has been a completely dedicated homosexual who would restrain himself in no pay in his quest for gratification of his unspeakable passion, most of which appears to be particularly directed toward youths of tender years. He would furthermore resort to any means, however vicious, to accomplish his purpose.
"Expert medical evidence reveals that he is sane and his sanity has not been made an issue and is not an issue. He is a psychopath and an advanced homosexual. However, he knows the evil he does is evil and he knows the crimes he commits are crimes. There is no indication that he was driven by impulses which he cannot control. It is only shown that he will not control them and has no desire to do so.
"The defendant was a complete stranger to the children he attacked. He sought them out solely to gratify his fiendish desires. He spared them in no way in seeking to accomplish his mission. He remains even now unrepentent but merely annoyed that he did not commit sodomy on the young boy instead of rape on the girl. He is and remains a menace to any human being exposed to him.
"One so callous has earned no right to a mitigation of the full consequences to him which the law provides. This trial judge makes no recommendation of mercy. It thus becomes the awful and painful duty of this Court to enter judgment of guilt and sentence to death."
[17] Saleilles, Raymond, The Individualization of Punishment (Boston: Little, Brown and Co., 1911) p. 181.