ERVIN, Justice:
We consider here petition for writ of cer-tiorari to the District Court of Appeal, Third District, which certified question of great public interest as to the correctness of its decision in Walker v. State (Fla.App.1973) 284 So.2d 448.
Petitioner Walker pled not guilty to first degree murder of his wife. He was tried by jury, found guilty and sentenced to life imprisonment pursuant to § 775.-082(2), Florida Statutes F.S.A. No pre-sentence hearing was held pursuant to the rules because the statute made a life sentence mandatory.
On appeal the District Court affirmed and certified its decision as passing upon a question of great public interest, namely “that it presents a question of a.claimed unconstitutionality of Florida’s mandatory life sentence for first degree murder”. The District Court held that there was no reversible error because a mandatory life sentence for first degree murder does not constitute a denial of equal protection, and the M’Naghten test of insanity is not a denial of substantive due process on the authority of Anderson v. State, 276 So.2d 17 (Fla.1973).
Before trial petitioner gave notice of intention to rely upon the defense of insanity pursuant to Rule 3.210, Fla.Cr.P.R., 33 F. S.A.
Petitioner and the State agree on petitioner’s summary of the pertinent expert medical testimony adduced concerning his defense of insanity, as follows:
“The facts of this case show the Petitioner to be a man whose mental processes were substantially impaired at the time of the homicide, even though he may have known right from wrong.
“Testimony concerning demonstrable brain damage conflicted. One physician testified that the defendant’s electroencephalogram showed abnormalities; another testified that it appeared normal but could indicate anxiety.
“One physician testified that there was evidence of organic brain damage; three testified that there was no such evidence and another that such damage was possible.
“One doctor testified that the defendant did not know right from wrong at the *29 time of the crime; another testified that he did; and four others equivocated although they were all inclined to think he did know right from wrong at the time of the crime.
“However, the doctors were unanimous in their judgment that the Petitioner suffered severe mental impairment at the time of the crime. They all agreed that his illness was such that extreme stress could trigger explosive and irrational behavior. All the Petitioner knew was that ‘something hit me and that was it.’ The doctors agree that because of his emotional problems, depression, inability to use his normal defensive techniques of avoidance and denial to control his impulses and ‘potentially explosive’ behavior, he was ‘under terrific emotional stress at the time’ of the crime. Emotional stress has to be avoided, because under such stress, the various doctors testified, he could ‘go berserk’, ‘blow a fuse’, ‘react in violent means’, exhibit ‘impulsive, perhaps irrational behavior’, completely lose control and go ‘blind with rage’. Violent behavior at such a time would be likely. The crime would have been committed even if a policeman had been there; the threat of punishment would not have stopped the defendant.”
Petitioner submits without' objection from the State that the following questions are embraced in the certified question:
I. Whether Florida’s legal requirement that all persons not insane under the M’Naghten rule who are convicted of first degree murder be sentenced to life imprisonment violates Florida’s constitutional ban against cruel punishment, where the evidence indicates the defendant suffered severe mental impairment at the time of the homicide.
II. Whether Florida’s legal requirement that all persons not insane under the M’Naghten rule who are convicted of first degree murder be sentenced to life imprisonment violates the due process or equal protection clauses of. Florida’s Constitution, as applied to a defendant who suffered severe mental impairment at the time of the homicide.
III. Whether the trial court erred in " using the M’Naghten test to determine the defendant’s criminal liability for his acts, as such test violates the due process clause of the federal and state constitutions.
As to questions I and II we agree that our precedents hold the trial court had no discretion at time of sentencing to consider the mental impairment of petitioner existing at the time of the crime, pursuant to Sections 782.04(1), 775.082(1) and (2), 921.141, F.S.A., or Rule 3.780 Cr.P.R., 33 F.S.A. As decided in Donaldson v. Sack (Fla.1972) 265 So.2d 499, and Anderson v. State (Fla.1972) 267 So.2d 8, the jury resolved with finality the factual issue of petitioner’s ability to distinguish right from wrong at the time of the crime, but not at time of sentencing.
The trial court, as to question III, erred, however, in bringing forward and applying the M’Naghten test in determining it had no authority at all to make a further independent determination of petitioner’s mental condition at the time of sentencing. Furthermore, we conclude that Section 775.082 (Section 2 of Chapter 72-724, Laws of Florida) must be read in connection with and subject to Rule 3.740 Cr. P.R. and Section 921.09, Florida Statutes. The trial judge had the duty at the time of pronouncing sentence, pursuant to Rule 3.-740, unfettered by Section 775.082 or by the jury’s prior utilization of M’Naghten, to follow the language of the Rule which reads as follows:
“(a) When the cause alleged for not pronouncing sentence is insanity, if the court has reasonable ground to believe that the defendant is insane, it shall *30 postpone the pronouncement of sentence and shall immediately fix a time for a hearing to determine the defendant’s mental condition. The court may appoint not exceeding three disinterested qualified experts to examine the defendant and testify at the hearing as to his mental condition. Other evidence regarding the defendant’s mental condition may be introduced at the hearing by either party.
“(b) If the court, after the hearing, decides that the defendant is sane, it shall proceed to' pronounce sentence or place the defendant on probation. If, however, it decides that the defendant is insane, it shall take proper steps to have him committed to the appropriate institution. If, after a defendant has been committed to an institution as insane, the proper officer of such institution is of the opinion that the defendant is sane, and so reports to the court, the court shall fix a time for a hearing to determine whether the defendant is sane. This hearing shall be conducted in the same manner as the original hearing to determine the defendant’s insanity. If found sane, the court shall proceed to pronounce sentence; if found insane, the defendant shall again be committed as hereinabove set forth. No defendant committed by a court to an institution, by reason of any examination referred to in this paragraph, shall be released therefrom without the consent of the court committing him.”
Section 921.09, Florida Statutes, expresses legislative intent that the foregoing Rule should be implemented when applicable. It reads as follows:
“Fees of physicians who determine sanity at time of sentence. — The court shall allow reasonable fees to physicians appointed by the court to determine the mental condition of a defendant who has alleged insanity as a cause for not pronouncing sentence. The fees shall be paid by the county in which the indictment was found or the information or affidavit filed.”
The foregoing considered, we disagree with the rationale of the District Court that the trial judge had no discretion whatever to hold an evidentiary hearing “as to the penalty to be inflicted on the defendant” as provided in Rules 3.740 and 3.780 read together, because of the jury’s prior finding of guilt under the M’Naghten test considered in relation with Section 775.082. As we view the matter the trial judge was free at time of sentencing to make an independent determination of petitioner’s sanity irrespective of the M’Naghten test applied by the jury.
The legislative intent in Section 775.082(2) to require life imprisonment in the event Florida’s death sentence penalty was declared unconstitutional (which occurred in Furman v. Georgia (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346) was not designed to obviate Rules 3.740 and 3.780. The object of Section 775.-082(2) was to make certain that if the death penalty which otherwise would have been imposed was not imposable because of Furman, a life imprisonment would be. Its mandatory requirement was not intended to eliminate insanity hearings and determinations and the same were not eliminated any more than they were before the Fur-man decision.
The intent of Rules 3.740 and 3.780 (which were merely carrying forward the intent of former statutes) was — at least so far as petitioner’s case is concerned — to afford a person found guilty by a jury the opportunity to have the question of his sanity condition at the time of sentencing determined by the sentencing judge before he could be incarcerated in a penal institution as a sane person. The intent of these rules is that no insane person shall be so incarcerated and thereby denied mental treatment and rehabilitation. Our evolving standards of enlightened humane justice require such judicial consideration as a final step before sentencing. As expressed *31 in Davis v. State (Fla.1960) 123 So.2d 703, individualization of punishment and treatment to fit the particular individual is the aim of modern penal law. It would be a travesty to incarcerate a mentally impaired individual in a penal institution, possibly creating a menace to other prisoners and a problem to his custodians denying him rehabilitative mental treatment.
Insofar as the decision of the District Court is in conflict with the views expressed herein, it is quashed with direction that if the trial court finds probable cause for same that it hold an evidentiary hearing and decide the question of petitioner’s mental condition at the time of sentencing in the light of the language of Rule 3.740 and decisions applicable thereto. Cf. Dor-man v. State (Fla.1973) 279 So.2d 854.
It is so ordered.
CARLTON, C. J., and BOYD and Mc-CAIN, JJ., concur.
ROBERTS, ADKINS and DEKLE, JJ., dissent.