**Raul S. RAMIREZ, Appellant,**

v.

**UNITED STATES, Appellee.**

· **No. 83–1160.**

District of Columbia Court of Appeals.
Argued Aug. 29, 1984.
Decided Oct. 24, 1985.

Hubert H. Margolies, Washington, D.C., appointed by this court, for appellant.

Carolyn J. Adams, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. di Genova, U.S. Atty., and Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. Edward C. McGuire, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before MACK and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

TERRY, Associate Judge:

Appellant was indicted for assaulting Jerome Smith with a dangerous weapon.[1] The assault occurred in the aftermath of a minor traffic accident involving appellant's car and that of Carolyn Charles, Smith's girl friend. After a jury trial, appellant was convicted of the lesser included offense of simple assault.[2] His only contention on appeal is that the trial court erroneously limited his counsel's cross-examination of Smith and Charles. We disagree and affirm the conviction.

**I**

Just before the trial began, the prosecutor informed the court that Smith and Charles were reluctant to testify, and that Smith wished to make a statement. The court took Smith, Charles, and both counsel into the jury room, where Smith said he wanted to drop the charges against appellant. He stated that when he reported the assault to the police, he was unaware that he would not have this option. Asked why he wanted to "back out of it," Smith replied that he did not feel well and that he had gained new "insight" into the criminal justice system through a recent trial in which he had been convicted. However, when defense counsel asked him if his reluctance was due to any fear that his testimony might not be the truth, Smith responded, "Everything I said would be the truth, yes. I have no fear of the truth." Charles, who

---

1. D.C.Code § 22–502 (1981).

2. D.C. Code § 22–504 (1981).

did not express any reluctance to testify, also disavowed any fear that her testimony would be untrue or that she might incriminate herself by testifying. The court then told Smith and Charles that they would not be excused and directed them to remain available. Everyone returned to the courtroom, and the trial began.

After the jury was selected, defense counsel told the court that he intended to ask Smith and Charles on cross-examination if they had ever expressed a desire to drop the charges against appellant and avoid testifying against him. He contended that such questions would be relevant both to their credibility and to the issue of whether an assault ever took place. The prosecutor opposed the allowance of such questions, and the court ruled *in limine* that defense counsel would not be allowed to ask the witnesses anything about their earlier statements in the jury room, on the ground that the reasons for their reluctance would not provide any basis for impeachment. The government then proceeded with its case.

The overlapping testimony of Carolyn Charles and Jerome Smith established the circumstances of the offense. Charles was double-parked on Harvard Street, N.W., late one evening at about 11:00 p.m., waiting for her boy friend Smith, when appellant's car backed into hers. Appellant drove away immediately, and Charles followed him, asking a bystander to call the police. She pursued him into an alley and caught up with him at the end of the alley. She then examined her car and discovered that one of her headlights was broken, but appellant denied hitting her car. When the police arrived a moment later, she told them what had happened, and after a brief conversation in Spanish between appellant and one of the officers, Charles and appellant exchanged names and addresses. Charles also gave an accident report to the police.

Charles then returned to the spot where she had been waiting for Smith; so did appellant, and the two "exchanged words." When she did not find Smith, she drove back up the block to his apartment. He came out, and the two of them went back to where she had been waiting and discussed the accident. While they were talking, appellant drove up again and stopped just a few feet away. Appellant's passenger came over and said something to Smith, and then Smith walked over to speak with appellant, who had remained at the wheel of his car. When Smith asked him if he had hit Miss Charles' car, appellant leaned towards him, "clicked" a gun, and pointed it at him. Smith immediately went back to Charles' car and told her that they should go. Appellant then got out of his car and, saying nothing, leaned back against it so that Smith and Charles could both see the handle of a gun protruding from the waistband of his trousers. The two of them quickly drove to a police station, where they reported the events of the evening.[3] Appellant was arrested on a warrant a couple of days later.

Appellant presented an alibi defense. Although he admitted the accident with Charles and the subsequent encounter in the alley, he denied returning to the scene of the accident and denied pulling a gun on Smith. Rather, he said, he returned home before 9:00 p.m. and spent the night there with his girl friend, Flora Parks, who corroborated his alibi. Both appellant and Parks testified that a friend named Juan Hernandez stopped by at about 9:30 and borrowed his car. Appellant also testified that Smith and Charles saw him in the hallway of the police station just before the lineup at which they identified him. Both Smith and Charles took the stand in rebuttal to deny this. When shown a photo-

3. Smith acknowledged on direct examination that he had been convicted in December 1982 of second-degree burglary and destroying property. On cross-examination he testified that he would be on probation for another three years, but he was unsure of whether the probation might end sooner.

graph of Mr. Hernandez, they also denied ever having seen him before.[4]

## II

Cross-examination is a fundamental right, guaranteed by the Sixth Amendment to the Constitution. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931); *Springer v. United States*, 388 A.2d 846, 854 (D.C.1978); *see Brookhart v. Janis*, 384 U.S. 1, 3–4, 86 S.Ct. 1245, 1246–1247, 16 L.Ed.2d 314 (1966). But the Sixth Amendment "only protects cross-examination that is relevant." *McKinzy v. Wainwright*, 719 F.2d 1525, 1529 (11th Cir.1983) (citations omitted). Once the constitutional requirement has been met, the scope and extent of cross-examination are within the trial court's discretion. The court may exclude any questions which, although relevant, are repetitious, unduly harassing or degrading, or potentially dangerous to the witness. *See Springer v. United States, supra*, 388 A.2d at 854–855.

Appellant asserts two separate grounds for challenging the trial court's refusal to allow Smith to be questioned about his reluctance to testify. The first is bias. He suggests that Smith's testimony might have been an attempt to curry favor with the government in the face of his recent burglary conviction. That this is a worthy subject for cross-examination is undeniable; bias is always relevant to a witness' credibility. But we cannot see how the trial court's ruling hampered appellant's ability to cross-examine Smith on this point. Smith's conviction had already been brought out on direct examination,[5] and on cross-examination defense counsel questioned Smith at some length about his hopes for an early termination of his probation and the extent of his contact with the prosecutors. The issue of bias was thus

squarely placed before the jury. Even if we were to conclude that Smith's reluctance to testify was at all probative of bias, the record would not support the further conclusion that the trial court's *in limine* ruling denied appellant his right to effective cross-examination on the issue.

Second, appellant argues that Smith's reluctance may have reflected a lack of confidence in his account of the crime. But "reluctance to testify ... without more, [has] no bearing on the witness' credibility." *Hendricks v. State*, 360 So.2d 1119, 1123 (Fla.App.1978), *cert. denied*, 441 U.S. 964, 99 S.Ct. 2411, 60 L.Ed.2d 1069 (1979). There is nothing in Smith's unwillingness to testify which casts any doubt on his credibility. When he made his statement to the court, the reason he gave for wanting to "back out of it," apart from his not feeling well, was his own recent adverse encounter with the criminal justice system. He specifically denied any possibility that his reluctance might result from a fear that his testimony would not be true. On this record it is clear that Smith's desire not to testify was not in any way relevant to his credibility. Accordingly, the Sixth Amendment gave appellant no right to cross-examine Smith, let alone Charles, about their statements to the court in the pre-trial conference.

In any event, the trial court's ruling did not inhibit appellant's cross-examination. After impeaching Smith with his arguably inconsistent grand jury testimony, defense counsel implied in a series of questions that Smith was not really sure whether appellant had pulled a gun on him. A moment later counsel openly suggested that Smith had concocted the entire story about the gun as "a face-saving gesture" to avoid humiliation in front of his girl friend. It does not appear to us that the court's ruling significantly hindered appellant in exer-

---

**4.** Hernandez did not testify. Other evidence, however, established that he was about 5'2" to 5'4" tall. Appellant testified that his own height was 5'11".

**5.** *See Kitt v. United States*, 379 A.2d 973 (D.C. 1977).

cising his constitutional right to cross-examine the witnesses against him.

There being no other claim of error,[6] the judgment of conviction is

*Affirmed.*

---

**6.** In his brief appellant makes what purports to be a claim of ineffective assistance of counsel. Read in context, however, this is merely a re-working of his cross-examination argument, not a separate argument in itself.