UNITED STATES of America

v.

**Darryl MORGAN, Marcellus Bowman.**

**Crim. No. 89–0266.**

United States District Court,
District of Columbia.

Jan. 25, 1990.

Asst. U.S. Atty. William Ho–Gonzalez, Washington, D.C., for U.S.

Allen Dale, Washington, D.C., for Morgan.

W. Gary Kohlman, Washington, D.C., for Bowman.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The defendants are charged in a two count indictment filed on August 10, 1989, with possession with intent to distribute cocaine base, 21 U.S.C. §§ 841(a) and (b)(1)(C), and use and possession of firearms in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). The case is now before the Court on the defendants' motions to suppress evidence.[1] After giving careful consideration to the motions, the opposition thereto, and the record in this case, the Court concludes that the motions should be granted.

### I

Briefly, the facts as found by the Court are as follows:[2] On or about July 6, 1989,

---

1. The Court heard the defendants' motions to suppress evidence and concluded that the motions should be denied. The case was continued for a trial on December 6, 1989. On that date the defendants moved for reconsideration noting that an officer present during the stop and search in question who was not available at the hearing, was now available and noting further that defendants had received a copy of the transcript of the preliminary hearing and that the testimony offered during the preliminary hearing differed in several significant respects from the evidence offered at the time of the hearing of the motion to suppress. The Court granted the motion for reconsideration and heard additional testimony. The evidence offered at the second hearing consisted of the testimony of one of the arresting officers, identified throughout as the "second officer," who was not present at the time of the original hearing on the motion, as well as the testimony of the defendant Morgan. The Court also recalled as a witness, the officer who testified at the first hearing, hereinafter identified as the "first officer."

2. Reference to "TR1" refers to the transcript of the hearing held on October 12, 1989, and refer-

the defendants Morgan and Bowman, as well as William Williams [3], were riding in a maroon Toyota. Morgan was the driver, Williams was seated in the front passenger seat and Bowman was seated in the rear seat, passenger side. The defendants were driving west on Park Road, in the District of Columbia, from 14th Street toward 16th Street, Northwest, with the intention of driving through Rock Creek Park.[4] The defendants proceeded on Park Road in a westerly direction to where it intersects with Mount Pleasant Street. They made a right on Mount Pleasant, either immediately before or immediately after the officers activated their emergency equipment. The officers, were assigned to the STOP task force, an acronym for the "Street Terror Offender Program", and apparently were on their way to handle a fugitive warrant.[5] They were driving in a northerly direction on 17th Street or Mount Pleasant Street [6] when, according to them, the defendants' automobile turned in front of them causing the officer to apply his brakes. The officers testified that when the defendants turned in front of them a second time they decided to stop the defendants because they were driving dangerously. The second officer, who was the passenger in the police car, testified that he recognized Morgan as someone he had stopped approxi-

mately two weeks before. The first officer testified that his partner told him that he recognized Morgan but was not clear whether he was so advised before the officers decided to stop the defendants' automobile or after the officers had made that decision. After considering the testimony, the Court concludes that the officer recognized Morgan *prior* to the decision to stop the automobile and that the recognition of Morgan was a factor which led to the decision to stop Morgan.[7]

Both officers exited their automobile, the first officer approached on the driver's side and the second officer approached on the passenger side. The first officer asked Morgan to step out and asked to search the automobile, and the second officer asked for his identification. Morgan indicated that the officer could do so, but under the circumstances of the stop of the defendants' automobile, the Court cannot find that the "consent" was voluntarily given by Morgan. The first officer asked for the keys to the trunk, and upon obtaining the keys from Morgan, opened the trunk with or without Morgan's assistance. Then, finding nothing, he went and reached under the dashboard, driver's side where he retrieved the drugs and guns. The defendants were placed under arrest and upon being searched, each yielded up a beeper.

ence to "TR2" refers to the transcript of December 7, 1989.

3. William Williams was originally charged in the indictment but was killed in Silver Spring, Maryland, prior to the first hearing on the motion to suppress, in an incident that was reportedly drug related.

4. The officers testified that they were driving in a northerly direction on 17th Street, Northwest, or Mount Pleasant Street, Northwest, and that the defendants were proceeding on the same street and going in the same direction. The Court accepts Morgan's version of the facts. At the first hearing, the officer was unable to advise the Court of the length of time he had been on 17th Street before the incident took place and exactly where the stop took place. This evidence was clarified by the officers during the second hearing, but the testimony of the defendants as to location and the direction the two cars were travelling appears to be more consistent with the location and the other facts offered by the witnesses.

5. The officer testifying at the first hearing stated that, "that particular day [July 6, 1989], we were on assignment down in Southeast, and some other officers requested assistance in the Northwest" and that he was driving and the other officer was navigating for him. TR1 at 33–34.

6. It was unclear whether the street in question is named 17th Street or Mount Pleasant Street at that location.

7. The first officer testified that his partner referred to the earlier stop and indicated that there had been a problem with Morgan's license at that time. TR1 at 29 and TR2 at 123. But earlier during that hearing, the first officer stated that; "He [the second officer] indicated to me that he recognized Mr. Morgan, that there had been a problem, some type of problem with his driver's license, and that the prior occasion about two weeks earlier, there had been indications of some type of narcotics involvement." TR1 at 6. It appears that the earlier incident involving Morgan had nothing to do with his license or drugs.

The beepers had not been observed or heard prior to the arrest of the defendants.

Although the officers stated that they stopped the defendants' automobile because of Morgan's erratic driving and because of their concern for the safety of the community, the officers never made an attempt to ascertain whether the defendants had been drinking or were driving under the influence; rather the officers immediately took action to search the defendants' automobile. The first officer testified that in connection with his duties in Howard County[8] he routinely stops drivers to ascertain whether they are carrying illegal drugs. In response to questions by the Court, the officer stated:

> The Court: Do you ask or request permission to search every car you stop or just some cars?
>
> The Officer: Not absolutely everyone., Sometimes if it was a woman with her children, I'm usually swayed not to [ask to search the car], but I do that sometimes, also. I've found drugs in people over sixty years old cars, so I try not to let my impressions, first impressions, sway me from not asking. I do it as matter of routine. And I teach officers that come out of the academy as a matter of routine to ask people. If they say no and you don't have any other violations, let them go.
>
> The Court: And there was no violation— well, suppose Mr. Morgan said no, what was going to happen at that time?
>
> The Officer: There was nothing I could have done at that point, but to tell him to have a good day and let him go.
>
> The Court: So you didn't intend to give him a ticket for traffic?
>
> The Officer: I didn't have any tickets. My intentions were to stop him, make sure he wasn't drunk or under the influence of something, or he wasn't acting mentally erratic, or make sure he had a valid license..
>
> The Court: Was there any indication that he was drunk or under the influence?

> The Officer: No, sir, none.

TR2 at 126–127.

As was noted above, at no time did the officers make any effort to determine whether the defendants had been drinking, or whether they were driving under the influence, or whether there was alcohol in the automobile. Immediately upon stopping the defendants, the officers sought his identification and asked to search the automobile. They began that search with the trunk. The Court finds such activity, up to that point, totally inconsistent with the purported traffic stop. Moreover, the first officer has stated that it is his routine practice to stop drivers to determine whether there are carrying drugs.

■ The Court finds that the traffic stop was nothing more than a pretext to stop the defendants' automobile to search for drugs. The Court further finds that prior to stopping the defendants' automobile, the officers lacked probable cause or a reasonable suspicion to believe that the defendants were engaged in any illegal activity. The Court finds further that the officers did not intend to give the defendants a traffic ticket. The Court also notes that this "traffic" stop took place while the officers were on their way to assist an officer.

II

The Court concludes that the stop of the defendants' automobile and the search that followed does not pass constitutional muster. *See United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). To summarize the Court's findings of fact, the Court finds that the officers did not stop the defendants' automobile because of the alleged erratic driving of Morgan; rather, the officers stopped the automobile out of a desire to search the defendants and the car. This finding is supported by the fact that once the automobile had been stopped and the

---

8. The first officer was on assignment with STOP from Howard County, Maryland.

officers approached the defendants, the first officer almost immediately asked to search the car. At no time did either officer seek to determine the reason for the alleged "erratic" driving and at no time did they seek to determine whether there was alcohol in the automobile. The fact that they were not concerned about finding the cause of the "erratic" driving is evident because the first area of the automobile they searched was the trunk, and the second was under the dashboard. Moreover, the stopping of the automobile to search for drugs is perfectly consistent with the first officer's testimony that he makes such stops and teaches other officers to do the same in his home district, Howard County, Maryland. He testified that he even stops women with children in the automobile in Howard County; thus it appears that he would not hesitate to make the same type of stop in the District of Columbia where three young men are in the automobile.

■ Once the officers had stopped the automobile they requested that Morgan consent to a search of the automobile. The Court finds that Morgan stated his consent but also finds that the "consent" was not voluntarily given for several reasons. First, the defendants were stopped by the officers for no valid reason; the Court has found that the "traffic stop" was a pretext. At this point the defendants had to be intimidated. Second, this was not a *Mendenhall*[9] type search where the defendants were free to walk or drive away. These officers did not advise the defendants why they were being stopped and the reasonable citizen does not drive away from a police car with its emergency signals activated, because by activating their emergency signals, the officers were indicating that they had a valid reason for stopping the automobile. There is simply no basis for describing this as a *Mendenhall* type "encounter." Third, almost the first words uttered by the officers were a request to search the automobile. All of these facts lead to the conclusion that the defendants did not consent to the search and the Court so finds.

Moreover, nothing in the record suggests that the officers conducted the search to protect themselves. *See Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). It is clear that the officers, in conducting a search of the trunk and under the dashboard, were looking for drugs, not weapons.

While the Court recognizes the earnest effort of the officers to search out and find illegal drugs and those that traffic in that sordid practice, such action must be undertaken in a manner that is consistent with the Constitution. Here the officers did not do so and therefore the motions to suppress must be granted.

An appropriate order has been entered.

---

**9.** *United States v. Mendenhall,* 446 U.S. 544, 100    S.Ct. 1870, 64 L.Ed.2d 497 (1980).