**Debra A. MINNICK, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–CF–39.**

District of Columbia Court of Appeals.

Argued Oct. 1, 1991.
Decided May 5, 1992.

---

Joanne M. Vasco, appointed by the court, for appellant.

Kristan L. Peters–Hamlin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Lori A. Green, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Appellant Minnick and a co-defendant, James Hayes, were charged with possession of phencyclidine (PCP) with intent to distribute it, in violation of D.C.Code § 33–541(a)(1) (1988). After the trial court denied her motion to suppress evidence, Minnick was found guilty by the court in a stipulated trial. On appeal she challenges only the denial of her motion. We affirm.

## I

On June 9, 1988, at about 7:00 p.m., Detectives Michael Keenan and Jeff Wasserman of the United States Park Police were sitting in an unmarked car in a restaurant parking lot at the corner of New York and Florida Avenues, N.E. They had been assigned to watch automobile traffic into and out of the nearby Lincoln Road area, which was, according to Keenan, "a section of the city known for the distribution of PCP, particularly to younger white people from Baltimore, Anne Arundel County, Howard County [and] northern Maryland." From where the detectives were parked, they could not see Lincoln Road,[1] and they did not witness any drug transactions that evening.

As they sat in the parking lot, the detectives noticed a tan Chevrolet driving west along New York Avenue. The car was occupied by appellant Minnick and her co-defendant, James Hayes. Approximately ten minutes later the same car appeared

---

1. Lincoln Road is about three blocks from the intersection of Florida and New York Avenues.

again, this time headed south on Florida Avenue toward New York Avenue. Minnick was at the wheel, and Hayes was seated beside her. Seeing Minnick make an illegal left turn onto New York Avenue, the detectives decided to follow her.

As they drove along behind Minnick's car, the detectives noticed it weaving slightly back and forth as it traveled east on New York Avenue. Keenan testified that Minnick's car crossed the white lines separating the lanes at least three times.[2] Because of this weaving and the illegal left turn, the detectives pulled Minnick over to the side of the road after following her for one-half to three-quarters of a mile.[3] Detective Keenan freely admitted in his testimony that he initially decided to follow Minnick and Hayes because they closely matched the profile of persons known to be involved in drug activity in that area, "but it was the traffic violation that finally caused me to pull them over."

Detective Wasserman got out of his car and walked over to Minnick's car on the driver's side, while Detective Keenan approached on the passenger's side. Wasserman asked Minnick for her driver's license and registration, and Keenan simultaneously asked Hayes to open his window. As soon as Hayes rolled the window down, Detective Keenan smelled a strong odor of PCP emanating from inside the car. Wasserman told Keenan that he too noticed an odor of PCP. Detective Keenan asked both Minnick and Hayes to step out of the car and then proceeded to search it. In the course of the search, Keenan dumped the contents of Minnick's purse onto the hood of the car, and when he did so, he found among those contents two vials of PCP. He seized the vials and placed Minnick and Hayes under arrest.

In denying Minnick's motion to suppress the vials of PCP, the trial judge said:

**2.** Failure to stay in the proper lane is a violation of the traffic regulations. *See* 18 DCMR §§ 2201.8–2201.10 (1987).

**3.** When asked by defense counsel why he had followed Minnick for such a distance, Keenan replied, "I was looking for a place to pull her over.... I wanted a place where I could get off the road if possible."

Here there were police who were staked out at a high narcotics area. They noticed this car going in. They noticed the car coming out of the area. They followed the car. According to the testimony, which I find credible, the car made an illegal turn. They followed it initially, [and] the car weaved. It could have been somebody driving under the influence of drugs, driving under the influence of liquor. The car weaved. It crossed or touched ... both lines. I believe the testimony of the police officer. It was stopped. At the time it was stopped, the officers asked the passengers to exit, and they detected a strong odor of PCP. That gave them the right to search the entire car, as far as I'm concerned, and anything in the car. And any seizure made at that time was incident to a lawful arrest, pursuant to a lawful stop. So the motion to suppress is overruled....

## II

◼ Minnick argues that the initial stop of her car by the two detectives was a sham and therefore unreasonable under the Fourth Amendment. More specifically, she maintains that the detectives stopped her car for the sole purpose of searching it for illegal drugs, even though they did not have probable cause to believe that she had committed a drug offense. She asserts that the traffic violation, which she says did not even occur, was merely a pretext for the detectives to stop her car and search it for drugs.

Minnick correctly notes that the Supreme Court has not directly dealt with an assertion that a traffic stop was pretextual. Although the Court in several cases has considered the propriety of random license checks, sobriety checkpoints, and the like,[4] it has never focused squarely on the consti-

**4.** *E.g., Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also Galberth v. United States,* 590 A.2d 990, 995–999 (D.C.App.1991).

tutionality of pretextual traffic stops.[5] This court, however, has recognized that a pretextual stop may violate the Fourth Amendment. In *Punch v. United States,* 377 A.2d 1353, 1356 (D.C.App.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978), we said that an exception to the general rule that the police may stop a vehicle after witnessing a traffic offense "may exist where the traffic stop is a sham to mask other purposes." Similarly, in *Mincy v. District of Columbia,* 218 A.2d 507 (D.C.App.1966), we held that a routine spot check of a motorist is not unreasonable "provided such a check is not used as a substitute for a search for evidence of some possible crime unrelated to possession of a driver's permit." *Id.* at 508 (citations omitted). These two cases at least suggest that evidence of pretext may make such intrusions constitutionally questionable.[6]

While neither *Punch* nor *Mincy* involved an allegedly pretextual stop, other courts have considered what factors might make a stop pretextual, and hence unconstitutional. The Eleventh Circuit invalidated on grounds of pretext a stop and subsequent search of a driver who had "allowed his right wheels to cross over the white painted lane marker about four inches, in violation of Florida traffic laws." *United States v. Miller,* 821 F.2d 546, 547 (11th Cir.1987). Earlier, in *United States v. Smith,* 799 F.2d 704, 706 (11th Cir.1986),

the same court invalidated as pretextual the 3:00 a.m. stop of a car for "weaving," when the officer testified only that the car had out-of-state tags, that it was occupied by two young men, and that the driver "appeared to be driving overly cautious" and did not look in the direction of the police car parked in the median as he drove past. *See also United States v. Valdez,* 931 F.2d 1448, 1451 (11th Cir.1991) (concluding "that the objective evidence reveals that [police officers] would have been uninterested in pursuing Valdez' violation of the right-of-way absent their hope of finding evidence of violation of the narcotics laws," and thus holding that the stop was "unreasonably pretextual and unconstitutional").

■ In determining or inferring that the traffic stops in all of these cases were pretextual, the Eleventh Circuit applied the same narrow objective test. Evidence of the officer's subjective intent in each case was deemed irrelevant by the courts. As the court noted in *Smith, supra,* "appellants are in error in contending that [the officer's] subjective motivation alone invalidates the stop." 799 F.2d at 708. This objective standard is constitutionally compelled. The Supreme Court has held:

> [T]he existence *vel non* of [a Fourth Amendment] violation turns on an objective assessment of the officer's actions in

---

5. In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court acknowledged that such an issue had been raised at an earlier stage of the case. It decided the case on a different ground, however, "leav[ing] for another day questions which would arise on facts different from these." *Id.* at 221 n. 1, 94 S.Ct. at 470 n. 1. *But cf. Texas v. Brown,* 460 U.S. 730, 743, 103 S.Ct. 1535, 1544, 75 L.Ed.2d 502 (1983) (plurality opinion) (surrounding circumstances gave "no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in 'plain view' in the course of a check for driver's licenses"; police had only a general "expectation" that some cars stopped by the roadblock might contain drugs).

6. In *Alvarez v. United States,* 576 A.2d 713 (D.C.App.), *cert. denied,* — U.S. ——, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990), the defendant was arrested for carrying an open can of beer on the

sidewalk, a violation of D.C.Code § 25–128(a) (1991). A search of his person revealed a switchblade knife, and as a result he was charged with and convicted of possession of a prohibited weapon. On appeal he argued for the first time that the arrest was pretextual. Because that issue had not been raised at trial, however, the defendant had "submitted no evidence to suggest that the arresting officer was acting pursuant to some improper ulterior motive." *Id.* at 717. Consequently, this court sustained the trial court's denial of his motion to suppress the knife. We did express concern, nevertheless, about the dangers of pretextual stops and arrests for "relatively trivial" offenses. *Id.* at 717 n. 7. We noted with approval an observation by the Supreme Court of Washington that "[b]ecause municipal codes often permit custodial arrests for minor and even trivial offenses, the risk of pretext arrests is heightened." *State v. Hehman,* 90 Wash.2d 45, 48, 578 P.2d 527, 529 (1978) (citations omitted).

light of the facts and circumstances confronting him at the time. Subjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional.

*Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *accord, Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 2308–2309, 110 L.Ed.2d 112 (1990) ("evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer"); *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985) (whether a Fourth Amendment violation has occurred does not depend on "the officer's actual state of mind at the time the challenged action was taken," citing *Scott);* *see United States v. Guzman,* 864 F.2d 1512, 1518 (10th Cir.1988) (reversing trial court ruling based on "a subjective inquiry, which ... was inappropriate").[7] The *Scott* case has been cited by this court as requiring an objective assessment of police conduct in determining the validity of stops and seizures. "Objective reasonableness is all that is required by the Fourth Amendment's prohibition upon 'unreasonable' seizures ...; the officer's asserted reason for his action is not controlling." *Marbury v. United States,* 540 A.2d 114, 115–16 (D.C.App.1985); *see also Alvarez v. United States, supra* note 6, 576 A.2d at 717; *Dunham v. District of Columbia,* 442 A.2d 121, 127 n. 8 (D.C.App.1982); *United States v. Mitchell,* 293 U.S.App.D.C. 24, 28, 951 F.2d 1291, 1295 (1991).[8]

While we are clearly governed by the *Scott* test in determining the validity of the traffic stop at issue here, there are differ-

ent formulations of this objective standard from which we may choose. The Tenth and Eleventh Circuits have given *Scott* a narrow reading in crafting their objective test. Those courts have held that "[i]n determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *Smith, supra,* 799 F.2d at 708 (emphasis in original); *see Guzman, supra,* 864 F.2d at 1515 (citing *Smith).* Those cases stand for the proposition that if the arrest or stop at issue *would* have been made by a reasonable police officer who was not looking for drugs, illegal aliens, or any type of contraband, then the stop will be upheld regardless of the officer's subjective intent. Such factors as the standard police practice in the area are vitally relevant under this test. *Id.* at 1518.

The majority of the circuits, however, have applied a different sort of objective test. The Seventh Circuit, for example, has held in *United States v. Trigg,* 878 F.2d 1037 (7th Cir.1989), that "so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional." *Id.* at 1041 (citation omitted); *accord, United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990) (citing *Trigg),* *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991); *United States v. Causey,* 834 F.2d 1179, 1184 (5th Cir.1987); *United States v. Hawkins,* 811 F.2d 210, 213–215 (3d Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). This test asks what a reasonable police officer *could* have done absent the allegedly improper motivation, not what he or

7. The Ninth Circuit's pronouncement in *United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir. 1986), that "[w]hether an arrest is a mere pretext to search turns on the motivation or primary purpose of the arresting officers" cannot be accepted in light of the contrary holding by the Supreme Court in *Scott.*

8. In a case decided before *Scott,* the District of Columbia Circuit invalidated the investigatory stop and "spot check" of a car being lawfully driven on a public street. The Court of Appeals, applying an objective test, held that the stop was

not "random" or "routine," as the officers had claimed, even though it was made in good faith. The search of the car, resulting in the discovery and seizure of contraband firearms, was therefore held unconstitutional. *United States v. Montgomery,* 182 U.S.App.D.C. 426, 561 F.2d 875 (1977). *See also United States v. Morgan,* 733 F.Supp. 1, 3 (D.D.C.1990) (purported reason for stop of vehicle was not objectively reasonable, but was "nothing more than a pretext to ... search for drugs").

she *would* have done. Under this formulation of the objective test, an arrest or a stop will be upheld as long as the police were doing what they were legally authorized to do; "the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted." *Causey, supra,* 834 F.2d at 1184.

It has been suggested that asking whether a reasonable officer *would* have acted in a certain way, as the Tenth and Eleventh Circuits require, "is, in practical application, not very different from that which would be undertaken if a subjective approach were employed." *Trigg, supra,* 878 F.2d at 1042 (Ripple, J., concurring). On the other hand, it has been suggested that asking what a reasonable officer *could* legally have done not only is simpler but leads to more consistent and more reliable results—though it also enables the police to stop citizens for the most trivial of reasons. After all, "few persons have a life so blameless that some reason to arrest them cannot be found...." *United States v. Causey, supra,* 834 F.2d at 1189 (Rubin, J., dissenting). We need not choose here between "could" and "would" because we are satisfied that appellant Minnick loses under either formulation; hence we leave the choice between them for another day.

■ When a traffic offense is committed in the presence of a police officer, a stop of the vehicle is generally lawful. "The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." *United States v. Mitchell, supra,* 293 U.S.App.D.C. at 28, 951 F.2d at 1295 (car stopped for speeding and failure to signal a turn; seizure of cocaine and guns from occupants of car upheld); *see United States v. Johnson,* 143 U.S.App.D.C. 215, 442 F.2d 1239 (1971) (car stopped for failure to display renewal sticker on license plate; ensuing seizure of narcotics from floor of passenger compartment upheld). The trial court found that Detective Keenan saw Minnick make an illegal left turn. We must accept that finding because it is supported by Keenan's testimony. *See* D.C.Code § 17–305(a) (1989). It may be that, but for their suspicions regarding possible drug activity and their consequent desire to watch her further, the officers would have stopped Minnick sooner. But there is nothing in the record to suggest that they would never have stopped her at all, or that the ordinary police practice is not to stop drivers who make illegal left turns. Thus, even under the "would" version of the test, Minnick has not made the requisite showing. We therefore hold that, under either the "could" or the "would" formulation of the *Scott* test, the traffic stop did not violate the Fourth Amendment.

### III

■ Whether or not Detective Keenan's search of Minnick's purse was constitutional rests on a different set of factors from the initial stop of her car. When he approached the car, Detective Keenan detected the strong smell of PCP. That fact, irrelevant in discussing the validity of the stop, is crucial to our consideration of the search of the purse. Because the aroma of PCP gave Detective Keenan probable cause to believe that illegal drugs were present in the car, the search of Minnick's purse did not infringe her Fourth Amendment rights.

The Supreme Court has held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). Briefly stated, *Ross* gives the police authority to conduct a warrantless search of the entire contents of a lawfully stopped automobile, including closed containers found in the automobile, if there is probable cause to believe that contraband is in the automobile or in the closed containers. *See California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). The instant case, involving the warrantless search of a container (Minnick's purse) found inside an automobile, is squarely controlled by *Ross.*

The question for this court is an easy one: did Detective Keenan have probable cause to believe that drugs were to be found inside Minnick's car? The odor of PCP noticed by both detectives provides a clear answer to that question. This court has repeatedly found probable cause to search an automobile based, at least in part, on an officer's recognition of the smell of drugs. *United States v. Bolden*, 429 A.2d 185 (D.C.App.1981) (police officer smelled marijuana and saw tinfoil packets which in his experience were used to package PCP); *Thompson v. United States*, 368 A.2d 1148 (D.C.App.1977) (police officers smelled marijuana and noticed hand-rolled cigarette); *United States v. Burton*, 327 A.2d 308 (D.C.App.1974) (police officer saw driver smoking hand-rolled cigarette, noticed that the smoke had a "strange odor," and then saw passenger hide something as he approached the car).

■■■■ While none of our earlier cases involved a situation in which the distinctive smell of a drug alone provided police officers with probable cause to search, we have no difficulty reaching that conclusion here. More than forty years ago the Supreme Court held that the smell of burning opium emanating from a hotel room gave investigating officers probable cause to obtain a search warrant. *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948).[9] Other courts have held that the smell of drugs alone may give an officer probable cause to search a vehicle.[10] We now join that consistent line of authority and hold that a police officer who smells the identifiable aroma of a contraband drug emanating from a car has probable cause to believe that the car contains a quantity of that drug. Nothing more is required under *Ross*. Because the search in this case was justified by the strong, distinctive odor of PCP which both detectives smelled as they approached Minnick's car, that search, which included Minnick's purse, did not violate the Fourth Amendment.[11]

## IV

Minnick also argues that her Sixth Amendment right to confront the witnesses against her was violated when the court curtailed her counsel's cross-examination of

**9.** The Court reversed the conviction, however, because the police entered the room and searched it without a warrant.

**10.** *See United States v. Lopez*, 777 F.2d 543, 551 (10th Cir.1985); *United States v. Thompson*, 558 F.2d 522, 524 (9th Cir.1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *State v. Barclay*, 398 A.2d 794, 797 (Me.1979) ("the odor of marijuana smoke emanating from the interior of the vehicle ... was sufficient to establish probable cause to search"); *State v. Gilson*, 116 N.H. 230, 233–34, 356 A.2d 689, 691–92 (1976) ("An officer with sufficient experience to recognize the odor of burning marijuana has probable cause to suspect its presence when he detects the odor with the confines of an automobile"); *State v. Sarto*, 195 N.J.Super. 565, 574, 481 A.2d 281, 286 (1984) ("the strong odor of unburned marijuana gave police probable cause to search the trunk for evidence of contraband").

The Fourth Circuit has analogized an officer's smell of marijuana within a vehicle to a plain view sighting of the contraband drug. "A strong, emanating odor of marijuana comes within the 'plain view' doctrine and need not be ignored by the officers." *United States v. Manbeck*, 744 F.2d 360, 380 n. 34 (4th Cir.1984) (citations omitted), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *cf.*

*Waugh v. State*, 20 Md.App. 682, 691, 318 A.2d 204, 210 (1974) ("Trained investigators are entitled to rely upon the sense of smell to establish probable cause, just as surely as they are entitled to rely upon the senses of sight, hearing, touch, or taste"), *rev'd on other grounds*, 275 Md. 22, 338 A.2d 268 (1975).

**11.** The search of Minnick's purse may also be sustained as incident to a lawful arrest. "Even though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, *at the time of the search*, there was probable cause to arrest." *United States v. Brown*, 150 U.S.App. D.C. 113, 114, 463 F.2d 949, 950 (1972) (citations omitted; emphasis in original), cited with approval in *McWilliams v. United States*, 298 A.2d 38, 39 (D.C.App.1972); *see Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa" (citations omitted)). Since the officers in this case had probable cause to arrest Minnick as soon as they detected the odor of PCP coming from the car, the fact that the search of her purse preceded the actual arrest is of no legal consequence.

Detective Keenan. More specifically, she claims that the court unconstitutionally prevented her from inquiring into certain behavior consistent with drug use which Detective Keenan did not see Minnick exhibit. We find no error, and hence no Sixth Amendment violation, because the trial court did not exclude any relevant evidence. *See Ramirez v. United States,* 499 A.2d 451, 454 (D.C.App.1985) (Sixth Amendment only protects cross-examination that is relevant).

■■■ While the right to cross-examine is inherent in the Sixth Amendment right to confrontation, "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). Thus a trial judge may validly "preclude repetitive and unduly harassing interrogation." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Reversal of a trial judge's curtailment of cross-examination is warranted only when there has been "an abuse of discretion [which] leads to prejudice." *Singletary v. United States,* 383 A.2d 1064, 1073 (D.C.App.1978) (citations omitted).

■■ We find no abuse of discretion here. Minnick's counsel was seeking to elicit testimony that Detective Keenan did not see any behavior by Minnick that was consistent with drug use. Detective Keenan on direct examination had listed the factors which caused him to suspect Minnick of drug activity, and observation of anything resembling drug use was not one of them.

Consequently, the testimony that counsel was trying to elicit from Keenan would merely have repeated what he had already said. Moreover, we discern no conceivable prejudice resulting from the court's ruling. The proposed questions about Detective Keenan's lack of observation of any physical characteristics of drug use would have had no bearing on the probable cause issue because, as we have held, the smell of PCP gave the detectives probable cause to search the car and all closed containers in the car, including Minnick's purse, where the incriminating substance was found. Any observation of Minnick smoking, sniffing, or injecting would thus have been superfluous.

## V

The initial stop of Minnick's car was justified by the detectives' observation of several traffic violations, including an illegal left turn. In the ensuing moments, the detectives acquired probable cause to search the car and its contents when they smelled the strong odor of PCP emanating from within the car. The denial of Minnick's motion to suppress the PCP seized from her purse was therefore proper, and the judgment of conviction is

*Affirmed.*